Lipscomb, J.
This suit was brought by Lockhart the appellee against Dewees the appellant, upon a promissory note in the following words:
“ Columbus, December 18, 1842.
“ Three months after date, I promise to pay Robert Lockhart or bearer, one hundred and twenty-eight dollars, to be paid in oxen, or cows and calves, for value received, December 18, 1842.
(Signed) “W. B. Dewees.”
The note is not set out in Imo verba, in the petition, but it is stated as a promise to pay so much money; the note was, however,copied correctly on the petition, and may be considered as constituting a part thereof.
The first objection taken by the appellant to the judgment in the court below is, that the note was not correctly described in the petition, and is variant from the one given in evidence. This objection would have been available, if the note had not been copied on the petition. It was certainly informal to omit setting out the noté substantially in the body of the petition, and giving a copy indorsed thereon, but, however informal, it served the purpose of advising the defendant of the evidence that would be relied on; for in his answer he avails himself of this notice, and avers that he had been and was ready to perform his promise. The plaintiff, if he had a right of action from the failure of performance on the part of his debtor, could sue for the money. This was according to his construction the legal effect of the note, and he set it out in his petitiou accordingly. "We can see no reason on this ground that it would be a surprise to the defendant for excluding the evidence, because he clearly had notice of it.
The second ground taken is the refusal of the presiding judge to permit him to prove by the local custom what was a tender. Local customs are sometimes important to show the meaning of words used in a written contract for the purpose, not of changing the contract, but for ascertaining the intention of the parties by using such terms, and have been admitted as proper evidence. This subject was discussed at some length by the court in the case of Roberts v. Short, and the propriety of receiving such evidence for that purpose recognized. It has, however, never it is believed been held that an acknowledged rule of law could be subverted by local custom. The sanction of such doctrine would lead to the most embarrassing consequences; it would unsettle the law and open for discussion and neighborhood proof, not the facts but the law; and every neighborhood might claim a district law of its own, when the beauty of the *(379) law is its conformity in being one and the same throughout the land. If there had been any doubt as to the meaning of the words, cows and calves, or oxen, used in the contract, and those terms had a peculiar and appropriate meaning in the plan of the contract, parol testimony would have been admissible to render certain, what was otherwise dubious. The word tender is not in the contract and is strictly a question of law arising from the facts; and as well might it be permitted to prove that by a particular local custom, such notes as the one sued on were n<j>t good contracts on which to sustain an action as to allow the law of tender to be proven from local custom.
The third objection made is, that the judgment ought not to have been rendered against the appellant, because he had proved a tender of performance.
The question is not raised in this case, as to where a tender of performance should be made, as the demand was made at the residence of the debtor, and we are consequently relieved from discussing and determining the true rule of the law on a subject that has given rise to a considerable conflict of decision. But to return to the question before us, it will be necessary briefly to state the facts, as they are to be collected from the record, by which the appellant contends his tender of performance was proven. Isham Tooke, a witness for the plaintiff, testified that he received the note mentioned in the petition, accompanied with a letter of instructions from the plaintiff, to take the property called for in the note at cash price. He called on the defendant and presented the note. He said he was ready to pay the note at sixty dollars for the yoke of oxen. The witness told him he would not receive them at that price, and testified that the value of oxen at that time was from twenty-five to thirty-five dollars, and cows and calves from three to five dollars, and under his instructions he would have received them át no higher price than they would have been sold for on the block. He further stated that the defendant had a sufficient number of oxen and cattle on the jlrairie in the immediate vicinity of Columbus to pay the note. He stated that no oxen or cows were pointed out to him. The defendant proved by 0. "W. Berry that about the time the note was presented, witness had purchased in the neighborhood of Columbus several yoke of oxen and paid equivalent to sixty dollars-cash for one yoke, a larger sum for another, and less for one other.
The jury found a verdict for the plaintiff for the amount of the note. The defendant made a motion for a new trial on the grounds that the verdict was contrary to law and evidence, which motion was overruled. If the evidence made out a tender of performance it was *(380) a discharge of the debt and a new trial ought to have been granted. Chancellor Kent, speaking of the tender of specific articles by the obligor and its eftect to discharge said debtor, says, “ if the debtor be present in person or by his agent and'make a tender of specific articles, at the proper time and place, according to contract, and the creditor does not come to receive them or refuses to accept them, the better opinion is, that if the articles be properly designated and set apart the debt is thereby discharged.” And further, he says, “ if the debtor be sued, he will be excused by the necessity of the case from pleading uncore prist and bringing cumbrous articles into court.” 2 Kent Com. 508. The doctrine of tender of ponderous articles is very different from that of money, which can easily be carried about and must be always ready in court for the creditor, but it would be unreasonable to require the debtor to be always charged with the trouble of keeping an article troublesome and cumbrous; hence the reason of the rule in such cases, that if the tender is made it discharges the debt. It is said by Chancellor Kent in the same volume and page first cited: “The weight of argument, if not of authority, and the analogies of the law would appear to lead to the conclusion, that on a valid tender of specific articles, the debtor is not only discharged from his contract, but the right of property in the articles tendered passes to the creditor.”
Mr. Chipman in his essay on the law of contracts, for the payment of specific articles, sustains the same doctrine that on such tender the debtor is discharged on the one hand, and on the other, the property is transferred to the creditor. Such being the legal effect of a tender operating as a transmission of title to the property, it would follow that the tender must be made in a way that it would render the article susceptible of being identified. If not it would be an empty or naked right without the means of proving it, and we have seen that it has been said by high authority that it must be designated and set apart. An offer to pay that did not so set apart the articles as to enable the creditor to identify them and claim them as his own would not be a tender in law. Would then an offer to pay oxen unseen and running on the prairie at large be such a designation and setting apart as would enable the creditor to claim them? Most cleai’ly not, and such offer never could be sustained as a legal tender, discharging the debtor and passing the property from him to the creditor. In the case under consideration if the debtor, the appellant, had wished to discharge the debt,.and felt confident that the price he had placed on the property was a fair cash price, he had only to designate and set apart the particular property that at such price would *(381) pay the debt; and had the creditor refused to receive it on his proving when sned that the price was a fair cash price, it would have been a full defense to the action. It could have been of no importance whatever on the trial of the cause in the court below to prove that the debtor had placed a fair price on the oxen without having first shown that they had been designated and set apart. If this had been done and the jury should have believed from the evidence that the price was not fair, but much above cash valuation, their verdict ought to have been for the amount in money. This would be the legal effect of the note. "We would not have felt authorized to set aside the verdict in this case if the tender had been proved, because it was still left with the jury to say whether the tender of the property was accompanied by a fair cash estimate of the value. And there being, but two witnesses, and they differing so widely, it was the province of the jury and not the court to weigh the testimony. We therefore believe there was no error in the refusal to grant a new trial, and the judgment is affirmed.