**BROWN et al. v. O'MEARA et al.**

No. 11878.

Court of Civil Appeals of Texas. Galveston.

Oct. 23, 1947.

Rehearing Denied Dec. 4, 1947.

John C. Townes and Lewis Fogle, both of Houston, for appellants.

Dyess & Dyess, of Houston, for appellees.

GRAVES, Justice.

This appeal is the second in this cause, the first one having been reported under the style of Brown et al. v. O'Meara et al., in Tex.Civ.App., 193 S.W.2d, at pages 715 to 722, inclusive, wherein, on the record then before it, this Court remanded the cause for re-trial; the Supreme Court thereafter refused a writ of error, pursuant to a holding that no reversible error had been shown.

Such prior litigation has greatly reduced the issues of law, which remain to be determined from the present appeal, the record in which reflects the proceedings had on the new trial formerly so ordered. Since the parties and the subject matter have remained generally the same, no further resumé as such of the facts, nor of prior procedures need be made, the report of the former appeal being herein so referred to and made part hereof. Moreover, none of this Court's holdings on the former record having contained reversible error, they will now all be followed as the law of the case, on the same facts, or the legal equivalent thereof.

The trial court this time submitted the cause on 20 special issues, which it deemed to comprehend all the material questions of fact raised by the pleadings and the evidence; on the coming in of the jury's verdict, in answer thereto, it thereupon—on the appellee's motion therefore—granted them the appealed from judgment on the jury's answers to issues Nos. 1, 3, 4, 5, 6, 7, 8, 11, 14, 15, 16, 18, 19, and 20—14 in all—notwithstanding the verdict upon remaining issues Nos. 2, 9, 10, 12, 13, and 17—6 in all.

The substance of such 14 answers was this: No. 1—The sum of $831.30 paid to the Federal Land Bank was paid by Mrs. Maness out of funds belonging to her children; No. 3—Mrs. Maness did not use the sum of approximately $832 furnished by Mrs. Brown for the purpose of paying the same to the Federal Land Bank; No. 4—Mrs. Brown, in having the property here involved deeded to her by Katy National Farm Loan Association by deed dated March 4, 1936, did so in furtherance of an agreement, express or implied, with Mrs. Maness that such title created by such deed would be held by Mrs. Brown for the use and benefit of the Maness children; No. 5—the Katy National Farm Loan Association in making foreclosure of the property here involved in February, 1936, did so for the purpose and with the intent to assist Mrs. Brown and Mrs. Maness in saving said property from Cook for the Maness children; No. 6—the Katy National Farm Loan Association in conveying to Mrs. M. L. Brown the property here involved by deed dated March 4, 1936, did so for the purpose and with the intent to assist Mrs. Brown and Mrs. Maness in saving said property from Cook for the Maness children; No. 7—Mrs. Maness, in giving to Mrs. Brown quitclaim deed dated February 13, 1936, did not do so in consideration of money theretofore furnished to her by Mrs. Brown; No. 8—In taking a quitclaim deed from Mrs. Maness to Mrs. Brown dated February 13, 1936, Mrs. M. L. Brown did, expressly or impliedly, agree to hold the property involved herein in trust for the use and benefit of the Maness children; No. 11—In taking the deed from the Katy National Farm Loan Association dated March 4, 1936, Mrs. M. L. Brown, expressly or impliedly, agreed to hold the same for the use and benefit of the Maness children; No. 14—In taking the assignment of the Federal Land Bank of a portion of its first mortgage lien indebtedness against the property in controversy herein and dated March 4, 1935, Mrs. M. L. Brown, expressly or impliedly, agreed to hold the same for the use and benefit of the Maness children; No. 15—the two annual installments due by L. F. Maness, to the Federal Land Bank on January 1, 1928, were paid by said Association to the Federal Land Bank in 1928 upon L. F. Maness' giving his note to said Association for the aggregate amount of said two installments, which note is dated January 30, 1928; No. 16—Lewis Fogle did

not advance funds for the account of Mrs. M. L. Brown on the land here involved without notice of claims of plaintiffs (appellants) or intervenor (appellee), and without knowledge of facts sufficient to put him upon inquiry, which would have led to his learning of the claims of plaintiffs and intervenor, which claims were asserted in this lawsuit; No. 18—we find Lewis Fogle received on account of the land here involved from rentals of oil leases and sales of easements for rights of way across said land up to this date, $2,450.04; No. 19—the Farm Loan Association stock, which was indorsed and delivered by Mrs. L. Ruth Maness to Mrs. M. L. Brown, on or about February 13, 1936, was the stock of such Association, which had been purchased by Perry V. Cook; No. 20—Perry V. Cook had indorsed such stock gratuitously to L. F. Maness for the accommodation of said Maness.

The remaining five answers to the issues the Court discarded were these: No. 2—in or about the month of November, 1935, Mrs. Maness was furnished approximately $832 by Mrs. Brown for the purpose of paying said money to the Federal Land Bank; No. 9—Mrs. Brown did at one time repudiate such trust; No. 10—Mrs. Maness knew of such repudiation more than four years prior to April 6, 1942, the date this suit was filed; No. 12—Yes, Mrs. Brown had at one time repudiated such trust; No. 13—Mrs. Maness did know of such repudiation more than four years prior to April 6, 1942, the date of which this suit was filed; No. 17—How much money did Lewis Fogel advance to Mrs. M. L. Brown, or pay out for her, on account of the land here involved, up to April 6, 1942? (No answer.)

Judgment was so rendered on the verdict that the Maness children and intervener Cook recover the land, and that one of the Maness children (the minor), and Perry V. Cook, recover of defendant Fogle $554.41, and of Mrs. Brown the Association's stock, and adjudging against defendants attorneys' fees for guardians ad litem, and all costs.

Obviously, if there was evidence sufficient to support the quoted answers of the jury to the 14 issues so found in the appel-lees' favor, the over-all question the appeal poses is whether or not, under the law, those facts—standing by themselves, irrespective of the other five answers quoted—supported such judgment.

Inveighing here against the judgment so adverse to them below, the appellants, after first asserting that, on the question of whether or not any kind of trust arose this time in favor of the Maness children, there had been no substantial nor material difference between either the pleadings or the evidence on the present trial, and those on the former trial, as discussed by this Court under Syllabus 4 of its opinion on the former appeal (Brown v. O'Meara, Tex. Civ.App., 193 S.W.2d 715, loc. cit. 721), attacked such judgment now at bar, under 19 stated points of error.

■ The first eight of these, from divers approaches, assert that neither the pleadings nor evidence supported the submission to the jury of the quoted issues, touching any kind of a trust in favor of the Maness children, especially of an implied or resulting one, and that this Court's cited opinion on the former appeal, under a completely analogous record, so declared.

This contention cannot be sustained. In the first place, there were material, if not indeed structural differences between the states of the two records referred to; and, in the second place, this Court did not in its former opinion hold that no trust in favor of the Maness children had or could have arisen—quite the contrary—as thus appears from its express declaration: "In order to sustain the right of the Maness children to recover the title of the land, it is necessary to establish that Mrs. Brown, while holding the lien securing the $831.30 in trust for the Maness children, acquired the deed from the Loan Association in trust for them, so that the lien merged in the title she acquired in trust for them. There was no motion made on behalf of the children that the court hold that so much of the agreement that provided that Mrs. Brown should hold in trust for Mrs. Maness be enforced as a resulting trust for her children. In a word, so far as plaintiffs and intervener are concerned, they tried the case on the theory that Mrs. Maness

owned a half interest in the property, and the children the remaining half. We cannot change the theory on appeal, after trial below. We sustain defendants' points that evidence wholly failed to sustain the jury's answers to special issues Nos. 1, 2, 3, 4, and 5."

This Court thereupon thus reversed that judgment: "in view of our holding that Cook is not entitled to recover the title or possession of the land, and such holding becomes the law of the case".

Wherefore, it is deemed unnecessary to recite further the various referred to differences this Court holds to have existed in respect to the trust issue between the two records on the respective appeals; suffice it to say, that both sides shifted their positions under their pleadings materially between the two trials, and this time the appellees, for their part, cured the very hiatus as to their claim of a trust in favor of the Maness children that existed before, which this Court then so pointed out.

Not only so, but further, in both their pleadings and their testimony, which went into the special issues so submitted to and found by the jury in their favor, they set out and declared upon the exact facts supporting their claim that the trust did arise in their favor alone, and not jointly with their mother, as had formerly been claimed by the children.

Indeed, this time any and all individual or personal interest in the land in Mrs. Maness had been entirely eliminated, contrary to what in that respect the former record showed, because of the indisputably established fact this time that the Maness children's money—that is, the $831.20—paid off the lien against the land held by the Federal Land Bank; in other words, that neither any of Mrs. Maness' money, nor any of appellant Mrs. Brown's, had been paid for the acquisition of any rights in either of them in the land, following the prior foreclosure thereon by intervenor Perry V. Cook at a trustee's sale, away back in October of 1933, which finally extinguished at that time any prior interest therein Mrs. Maness may have had.

So that, while it thus becomes unnecessary to go afield for authority beyond this Court's own cited former opinion, to support the Trial Court's finding of a trust's having arisen this time in favor of the Maness children, these are cited: Highsaw v. Head, Tex.Civ.App., 202 S.W. 155, affirmed by the Supreme Court, Tex.Com. App., 228 S.W. 561; Howe et al. v. Howe, 199 Mass. 598, 85 N.E. 945, 127 Am.St.Rep. 516; Adcock v. Shell, Tex.Civ.App., 273 S.W. 900, writ of error refused; Caldwell v. Bryan's Ex'r, 20 Tex.Civ.App. 168, 49 S.W. 240, 242, no writ; McCoy's Heirs v. Crawford, 9 Tex. 353, at page 357; Leakey v. Gunter, 25 Tex. 400, 403; Byrnes et al. v. Morris et al., 53 Tex. 213, at page 218; Schultz v. Scott, Tex.Civ.App., 210 S.W. 830, no writ; 42 Tex.Jur. 608, Sec. 9, 42 Tex.Jur. 613-614, Sec. 12; Newman v. Bank of California, 80 Cal. 368, 22 P. 261, 5 L.R.A. 467, 13 Am.St.Rep. 169; Keith v. Keith, 39 Tex.Civ.App. 363, 87 S.W. 384; Duncanson et al. v. Howell, Tex.Com.App., 222 S.W. 232, 235; Redwine v. Coleman, Tex.Civ.App., 71 S.W.2d 921, 923, writ refused; Hall v. Rawls, Tex.Civ.App., 188 S.W.2d 807, 812, writ refused WOM; 65 C.J. 222, Sec. 13; Chadwick v. Arnold, 34 Utah 48, 95 P. 527; Bush v. Stanley, 122 Ill. 406, 13 N.E. 249; Daniel v. Irwin, Tex. Civ.App., 250 S.W. 254, writ refused.

██ Under the cited holdings, it is further made clear that the Trial Court committed no error prejudicial to any rights in either of the appellants by discarding the jury's further quoted findings, supra, in response to issues 2, 9, 10, 12, 13, and 17.

This, for the reason that the other findings having irrefragably established a prior and overriding trust in favor of the Maness children, none of these detailed matters could undermine or prevail against it.

Appellants' points 9 to 12, inclusive, dealing, as they do, with matters corollary to their first stated contentions in pronouncing against any character of trust in favor of the Maness children, are overruled without further detailed discussion. This record conclusively shows that the Maness children this time were not claiming under their mother, that their mother, having so formerly lost any title in the land she may ever have had, had disappeared from the picture, except only as a trustee for her

children; also that intervenor Cook, having lost any title he originally may have had in the land by having failed to pursue his claim in the former trial, as held by this Court at page 720, 193 S.W.2d, of its cited opinion on the appeal therefrom, but having re-appeared this time as the bona fide owner—through purchase from three out of the four Maness children after they had become 21 years of age—of his present title, therefore, as appellants themselves concede, he depended on the title of the three Maness children; since their title was properly held below to have been made out, it follows that Cook's was also.

■ The thirteenth and fourteenth points, attacking the Court's admitting in evidence a contract between intervenor Cook and Mrs. Maness and her children and their guardian, as well as the Probate Court's order approving the same—having to do with a contemplated suit to be brought to establish as a fact that Mrs. Brown was holding the land involved in this suit in trust for the plaintiffs therein—are overruled, as involving no prejudicial error. The record shows that neither the contract nor the probate court order thereon were introduced in evidence as a whole, but solely on the question of Cook's good faith, which had been attacked by appellants. It appears to have been admissible for that purpose. 17 Tex.Jur. 372; Thomas, Adm'r v. Lewis, 89 Va. 1, 15 S.E. 389, 18 L.R.A. 170, 37 Am.St.Rep. 848.

■ Appellants' fifeenth point is this: "The undisputed and unimpeached evidence being that Defendant Fogle advanced and paid out money to Mrs. Brown, and on account of the land, without notice of Appellees' claim, the finding of the jury to the contrary and judgment thereon constitute reversible error."

On the oral argument of this appeal, appellants were permitted to file a re-statement, along with other things, of Mr. Fogle's claimed account under this assignment, as well as an answer thereto by the appellees. But, after diligent effort to unravel a somewhat complicated state of the record on this question, this Court is unable to sustain this assignment against the action of the Court and jury upon a holding that the undisputed and unimpeached evidence thereon is in favor of the appellants' contention concerning it; it must therefore be overruled.

In general, it may be said that there is no controversy between the parties over the fact, which the appellees admit, that the appellant Fogle did pay out money on account of the land here involved, but it is, with equal positiveness, asserted by the appellees that the record shows him to have been given credit in the judgment herein for every dollar so paid out by him, including the $1,712.68 covering four items listed under the fifteenth point in different amounts to the Federal Land Bank, on account of taxes, abstract, and repairs.

Moreover, it would further seem that, under the opinion of this Court on the former appeal, and under the case of Bicocchi v. Casey-Swasey Co., 91 Tex. 259, 42 S.W. 963, 66 Am.St.Rep. 875, even if he had other claims accruing to him from mere equitable rights with reference to the land in suit, since, as such, they were necessarily subsequent to the equitable rights of the Maness Children, they became subordinate thereto.

Finally, on this feature the judgment entered by the Court below against appellant Fogle for $454.41 appears to have been there found to be the amount due from him, after deducting from the $2,450 he was found, under Issue No. 18, to have received on account of the land from rentals, etc., all sums he had paid out on account of the land, including the $550.41 paid by him to Cook under the execution.

■ No reversible error was involved, as contended in Points 17 and 18, in either permitting appellees' counsel to read in evidence selected portions from appellant Mrs. Brown's testimony on the former trial, and merely suggesting to her in that connection, this: "Talk to your lawyers about it, and see if they can explain it". When the context and setting of the procedure are looked to, there would seem to be nothing improper therein; moreover, the Trial Court instructed the jury not to consider the statement of Mr. Dyess (the attorney for the appellees), and the matter appears to have ended there.

Lastly, appellants present this: "Fees for attorney ad litem should be charged to the party represented, not to defendant." The Trial Court, however, followed the Statute, R.S.Art. 2159, now No. 173, Texas Rules of Civil Procedure, which expressly provides that such fees shall "be taxed as a part of the costs".

These conclusions require an affirmance of the judgment. It will be so ordered.

Affirmed.